IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JIMMY T. WINDSOR, | ) |
| APPELLANT | ) |
| v. | ) CR. NO. 2:07po276-MEF |
| UNITED STATES OF AMERICA, | ) |
| APPELLEE | ) |

BRIEF

Comes now the United States of America, by and through Leura G. Canary, United States Attorney for the Middle District of Alabama, and files its Brief in the above referenced case.

Jimmy Windsor was issued a citation by Park Ranger Ronald Allen Bertrand for violation of a ban on open flames at White Oak Campground on June 16, 2007. White Oak Campground belongs to the United States Government under the supervision of the U.S. Army Corps of Engineers. Mr. Windsor entered a plea of not guilty to the citation and his case was heard before United States Magistrate Judge Terry F. Moorer on November 6, 2007. The citation was a violation of 36 CFR §327.12(c) which prohibits any act or conduct which interferes with... or impairs the safety of any person. The ticket alleged Mr. Windsor had a fire after he had been told there was a ban on open fires and his fire caused a safety hazard to all of the other campers in the area.

The United States presented three witnesses in prosecution of the case. Lisa Gay O'Steen testified she had camped at White Oak Campground, in the Eufaula area, for twenty years and camps there approximately ten times a year. (R1-3 & 4). She testified that when they checked in at the campground for Father's Day weekend in June, there was a sign posted that said burn ban. When

they checked in, the gatekeepers told them no campfires, no candles, no anything of that nature. (R1-4 & 5). Mrs. O'Steen testified that on Friday night, Mr. Windsor had a campfire in the site next to hers and her husband told the gatekeeper who had Windsor put it out. He built another fire the next night after the gate closed. (R1-6). Ms. O'Steen was certain the fire was on Mr. Windsor's campsite and it was a very large flame. She made the comment to her husband that it was a roaring fire. This was between ten and eleven at night and she took a picture of the fire. (R1-7). Mrs. O'Steen testified when she initially smelled smoke, knowing there was a burn ban, she thought it might be within her camper and she was concerned, a little bit scared. As dry as it was, it could have spread fairly quickly. The next day they again notified the gatekeepers who let the park rangers know. (R1-10).

Terry Lee Potter, Sr., testified he is retired from the Navy and had worked as a park attendant at White Oak Campground during a seven month period each year for about eight years. (R1-21). He was working as a park attendant on June 16, 2007, when there was a ban on open flames. The State of Alabama had come out with a fire ban and the rangers notified them there could be no fires or open flames of any kind. Mr. Potter said the ban was posted on the window, on the bathrooms, and they drove through after dark to make sure there were no fires. Mr. Potter explained the window was the one at the gatehouse at the entrance to the park. (R1-22-23). Mr. Potter testified he received a complaint on the 15th, Friday night, that there was a fire on a site and he went there and approached Mr. Windsor who had a fire going. He told Mr. Windsor of the fire ban and Mr. Windsor said "We'll just let it burn out." He then told Mr. Windsor he had to put it out. Mr. Potter testified several people called regarding the fire but that sites 53 and 54 had tried, without success, to get Mr. Windsor to put out the fire. (R1-25-26). Mr. Potter said there was another fire at Mr. Windsor's the next night but he did not learn about it until Sunday morning when Mr. O'Steen came up to the

gatehouse and told him another fire had been lit and they had a picture of it. Mr. Potter went to the O'Steen campsite, looked at their camera, and called the rangers. (R1-26 & 28).

Ronald Allen Bertrand testified he was a park ranger with the U.S. Army Corps of Engineers and responded to a complaint against Jimmy Windsor. Ranger Bertrand testified that when he got to work Sunday morning, he was told that White Oak had called and they needed to speak to a ranger because they had a problem. When Ranger Bertrand got to White Oak campground, he called the O'Steens at their camper and asked them to come to the gatehouse to discuss the problem. The O'Steens told Ranger Bertrand they wanted to write a formal complaint against Mr. Windsor because he had a fire Friday night and the gate attendant told him he could not have it and then he started a big roaring fire again Saturday night. The O'Steens were afraid for their lives for fear the fire would get away. They were not able to get to sleep until the fire went down. Ranger Bertrand testified all the campgrounds in Alabama and Georgia asked the site manager to make a ban. All of the campgrounds at that time had no open flames at all because the states of Alabama and Georgia considered it so dry that they asked not to have any open flames. (R1-37-39). Mr. Windsor agreed there was a fire on his campsite. (R1-51). At the conclusion of the testimony, Assistant United States Attorney Nathan Stump asked the Court to take judicial notice of the defendant's admission during the cross-examination of Ranger Bertrand that he agreed there was a fire on his campsite, and does not deny there was a fire on his campsite. (R1-58).

Mr. Windsor was found guilty by the Magistrate Judge and now appeals his conviction to the District Court. Mr. Windsor presents a number of questions to the District Court in his appeal but appears to address many things other than the real issue: did he have an open flame during a no burn order? The answer is yes as established by the testimony of Mrs. O'Steen and the photograph of the

fire that she took. Furthermore, Mr. Windsor admitted he had a fire on his campsite.

Mr. Windsor's first complaint on appeal is that he was not given the option of a jury trial. He was charged with a violation of 36 CFR §327.12. The penalty provision for that section is 36 CFR §327.25 which sets a maximum penalty of not more than $5,000 or imprisonment for not more than six months or both. This section provides for trial and sentence pursuant to the provisions of Title 18, United States Code, Section 3401. Crimes carrying a maximum term of no more than six months are presumed to not entitle a defendant to a jury trial. Blanton v. City of North Las Vegas, 489 U.S. 538 (1989); U.S. v. Chavez, 204 F.3d 1305 (11th Cir. 2000). He only received a fine of $175.00 and was not entitled to a jury trial.

Mr. Windsor next questions whether or not Ranger Bertrand left out important information on the citation and issued the ticket on hearsay. Clearly the ticket contained sufficient information to inform Mr. Windsor of the charges for which he needed to prepare a defense. Ranger Bertrand had a personal witness to the offense who not only desired that a citation be issued, but was also interested enough to come to court and testify at Mr. Windsor's trial.

Mr. Windsor also complains his Freedom of Information request was violated by requested information being withheld which limited his preparing a proper defense. Yet he has given this court no specific information of how he has been prejudiced. He was able to present any evidence he had available and did not call any witnesses. Mr. Windsor was permitted to cross-examine all the government witnesses and he did so. Mr. Windsor knew the offense for which he was charged and he was allowed to defend against the charge.

Mr. Windsor alleges he was singled out by the Corps of Engineers and questions why other campers were not cited. Yet he has shown no support for his allegation that he was singled out.

Further, when Mr. Windsor was cross-examining Ranger Bertrand, the Ranger testified that a friend of Mr. Windsor's told him there were other fires. The Ranger told the friend if he would file a claim, he would go write some more citations. (R1-51). There has been no evidence Mr. Windsor was singled out, only that he was the only violator.

Finally, Mr. Windsor questions whether the burn ban was posted in accordance with CFR §1.7. That section provides as follows:

(a)　Whenever the authority of §1.5(a) is invoked to restrict or control a public use or activity, to relax or revoke an existing restriction or control, to designate all or a portion of a park area as open or closed, or to require a permit to implement a public use limit, the public shall be notified by one or more the following methods:
  (1) Signs posted at conspicuous locations, such as normal points of entry and reasonable intervals along the boundary of the affected park locale.
  (2) Maps available in the office of the superintendent and other places convenient to the public.
  (3) Publication in a newspaper of general circulation in the affected area.
  (4) Other appropriate methods, such as the removal of closure signs, use of electronic media, park brochures, maps and handouts.
(b)　In addition to the above-described notification procedures, the superintendent shall compile in writing all the designations, closures, permit requirements and other restrictions imposed under discretionary authority. This compilation shall be updated annually and made available to the public upon request.

The evidence clearly established that signs were posted as required. But most importantly, Mr. Windsor was made personally aware of the burn ban on June 15th by Mr. Potter when Potter told Windsor to put out the fire Friday night. This is not just public notice, but is, in fact, personal notice. Importantly, Mr. Windsor was not given a ticket or even a warning for Friday night's fire, only required to put it out. In defiance of the burn ban, Mr. Windsor built another fire on June 16th. It frightened his neighbors so that they were unable to sleep while the fire raged.

Wherefore, premises considered, the United States submits the verdict of the Magistrate Court is due to be affirmed.

Respectfully submitted this the 7th day of April, 2008.

    LEURA G. CANARY
    UNITED STATES ATTORNEY

    /s/ Kent B. Brunson
    KENT B. BRUNSON
    Assistant United States Attorney
    Post Office Box 197
    Montgomery, Alabama 36101-0197
    334-223-7280 Phone
    334-223-7135 Fax
    E-mail: kent.brunson@usdoj.gov

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JIMMY T. WINDSOR, | ) | |
| | ) | |
| APPELLANT | ) | |
| | ) | |
| v. | ) | CR. NO. 2:07po276-MEF |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| APPELLEE | ) | |

CERTIFICATE OF SERVICE

I hereby certify that on April 7, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and I mailed by United States Postal Service the document to the following non-CM/ECF participant: Jimmy T. Windsor, 9920 South County Road 55, Cottonwood, Alabama 36320.

Respectfully submitted,

LEURA G. CANARY
UNITED STATES ATTORNEY

/s/ Kent B. Brunson
KENT B. BRUNSON
Assistant United States Attorney
Post Office Box 197
Montgomery, Alabama 36101-0197
334-223-7280 Phone
334-223-7135 Fax
E-mail: kent.brunson@usdoj.gov